USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/14/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
                                                                 :
MARVIN ROSENBLATT,                                               :
                                                                 :   **OPINION AND ORDER**
                                      Plaintiff,                 :   **GRANTING DEFENDANT'S**
     -against-                                                   :   **MOTION TO DISMISS THE**
                                                                 :   **COMPLAINT**
COUTTS & CO. AG and THE ROYAL BANK OF                            :
SCOTLAND PLC,                                                    :   17 Civ. 3528 (AKH)
                                                                 :
                                      Defendants.                :
                                                                 :
---------------------------------------------------------------- X

ALVIN K. HELLERSTEIN, U.S.D.J.:

        Plaintiff Marvin Rosenblatt ("Rosenblatt") brings this action alleging breach of contract and promissory estoppel claims against defendant Coutts & Co. AG ("Coutts"), and a claim for tortious interference with contract against defendant Royal Bank of Scotland PLC ("RBS"). Defendants move to dismiss the complaint pursuant to Rule 12(b)(2) and (b)(6) for lack of personal jurisdiction, under the doctrine of *forum non conveniens*, and for failure to state a claim. For the reasons discussed below, I hold that the Court lacks personal jurisdiction over both defendants. Defendants' motion is granted.

### STATEMENT OF FACTS

        Rosenblatt is an American citizen residing in New York. Compl. ¶ 4. Coutts is a Swiss corporation with headquarters in Zurich. It has no offices, operations or employees in the United States. Trippel Decl. ¶ 2. RBS is a U.K. corporation with headquarters in Edinburgh, Scotland. It has a minimal presence in the United States, but has no offices, operations or employees in New York. Trippel Decl. ¶¶ 2, 5.

        In 2003, Rosenblatt purchased a property in Saanen, Switzerland, which he sought to turn into a center for a charitable foundation called the Gstaad Institute for the Humanities and

Humanitarian ("GIHH"). Compl. ¶¶ 10-12. In 2008 and 2010, Rosenblatt entered into two mortgage loan agreements with Coutts that were secured by Rosenblatt's property in Saanen. Compl. ¶¶ 17-21. Rosenblatt alleges that in 2012, Coutts made a clear promise to support GIHH financially by increasing its loan to Rosenblatt, and that following this promise, Rosenblatt entered into a new mortgage loan agreement with Coutts and began to invest money into the property. Compl. ¶¶ 27-28, 33.

Both Rosenblatt and Coutts executed the 2012 loan agreement in Switzerland; on the signature page, Coutts identified the place of the agreement as Zurich, Switzerland, and Rosenblatt identified the place of the agreement as Saanen, Switzerland. Compl. Ex. A at 4. Regarding choice of law and jurisdiction, the agreement provided as follows: "The Contract is governed by Swiss law. Place of performance and place of legal proceedings against the Client domiciled abroad, as well as the exclusive place of jurisdiction is Zurich. The Bank shall however, be entitled to commence any legal proceedings against the Client in any competent court at his domicile or in any other court of competent jurisdiction." Compl. Ex. D at 2. The agreement listed Rosenblatt's address in New York, not Switzerland. Compl. Ex. A at 1.

Prior to entering the 2012 agreement, Rosenblatt had several discussions with Coutts representatives regarding both GIHH and the terms of the agreement. For the majority of those discussions, which occurred over both phone and email, Rosenblatt was located in New York. Rosenblatt Decl. ¶ 7; Compl. ¶¶ 25, 34. For example, on April 30, 2012, a Coutts employee named David Woolley exchanged multiple emails with Rosenblatt while Rosenblatt was in New York. Woolley also called Rosenblatt as his New York telephone number. Rosenblatt Decl. ¶¶ 10-11. Woolley and Rosenblatt engaged in additional email and phone correspondence during the spring of 2012. *Id.* ¶¶ 12-16. Coutts also emailed an unexecuted copy of the agreement to Rosenblatt while he was in New York. Compl. ¶ 35.

Per the agreement, Coutts debited Rosenblatt's loan payments from a bank account that Rosenblatt maintained in Switzerland. Compl. Ex. A at 3. Coutts sent correspondence regarding the servicing of the loan to Rosenblatt's property in Switzerland. Trippel Decl. ¶ 7; Compl. Exs. B and C. However, Rosenblatt alleges that Coutts also sent copies of this correspondence to his address in New York, and also sent email correspondence relating to the loan to Rosenblatt while he was residing in New York. Rosenblatt Decl. ¶¶ 17-20. Rosenblatt also identifies two occasions on which Coutts transferred funds and stocks held by Coutts on Rosenblatt's behalf to accounts maintained by Rosenblatt in New York. Rosenblatt Decl. ¶¶ 21-22.

In November 2015, Coutts terminated the loan and demanded repayment. Compl. ¶ 57. The decision to terminate the agreement was made by Coutts' employees located in Switzerland, and the termination letter was sent to Rosenblatt's address in Switzerland. Trippel Decl. ¶ 8; Compl. Ex. E. Throughout this entire period, both before and after the execution of the 2012 agreement, no employees or representatives from Coutts or RBS ever came to New York in relation to Coutts' business with Rosenblatt.

Rosenblatt alleges that Coutts breached the 2012 agreement by terminating the loan. Rosenblatt also asserts a claim for promissory estoppel against Coutts on the theory that Coutts' representatives promised Rosenblatt that Coutts would support GIHH by providing a bigger loan, and that Rosenblatt relied on that promise by investing money to improve the property. Lastly, Rosenblatt asserts a claim for tortious interference with contract against RBS, Coutts' indirect parent company, on the theory that RBS "induced" Coutts to terminate the loan agreement with Rosenblatt specifically because Rosenblatt is an American citizen. Compl. ¶¶ 71-90.

3

## DISCUSSION

### I. Legal Standard

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit. In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists. Such a showing entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34-35 (2d Cir. 2010) (internal quotation marks and citations omitted). The "pleadings and affidavits must be viewed in the light most favorable to the plaintiff, with all doubts resolved in its favor." *Alpha Capital Anstalt v. Oxysure Sys., Inc.*, 2017 WL 2271518, at *2 (S.D.N.Y. May 8, 2017). However, courts "will not draw argumentative inferences in the plaintiff's favor," and are not required "to accept as true a legal conclusion couched as a factual allegation." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (internal quotation marks omitted). "A plaintiff must establish the court's jurisdiction with respect to *each* claim asserted." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004).

### II. The Court Lacks Personal Jurisdiction Over Coutts

Rosenblatt concedes that Coutts is not subject to general jurisdiction in New York, but contends that there is specific jurisdiction over Coutts pursuant to Section 302(a)(1) of the CPLR, which provides that "a court may exercise personal jurisdiction over any non-domiciliary ... who ... transacts any business within the state or contracts anywhere to supply goods or services in the state." CPLR § 302(a)(1). "For a court to exercise jurisdiction under this provision, the claim must 'arise from' the transaction of business within the state." *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996). "The New York

4

Court of Appeals has explained that 'the overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York,' thereby 'invoking the benefits and protections of its laws.'" *Licci*, 673 F.3d at 61 (internal citations omitted). Additionally, in a "breach of contract case, the pivotal inquiry is whether the defendant has performed purposeful acts in New York in relation to the contract." *Bonsey v. Kates*, 2013 WL 4494678, at *4 (S.D.N.Y. Aug. 21, 2013) (internal quotation marks omitted).

In assessing whether a defendant "transacts any business" in New York, courts should consider the following factors:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Sunward Elecs.*, 362 F.3d at 22 (citation omitted). "In determining personal jurisdiction under Section 302(a)(1)," courts "look to the totality of the defendants' contacts with the forum state." *Banker v. Esperanza Health Sys., Ltd.*, 201 F. App'x 13, 15 (2d Cir. 2006).

Rosenblatt has failed to meet his burden to make a prima facie case that jurisdiction over Coutts exists. Both parties executed the agreement in Switzerland. The agreement concerned property in Switzerland, and specified that Swiss law would apply in any dispute between the parties. Coutts also originated and serviced the loan from Switzerland. The *only* connection this case has to New York is the fact that Rosenblatt resides here, but Rosenblatt alleges no facts showing that Coutts "purposefully availed itself of the privilege of conducting activities within New York." *Licci*, 673 F.3d at 61.

5

Rosenblatt's jurisdictional allegations thus boil down to the following facts: (i) Coutts spoke on the phone and emailed with Rosenblatt regarding the agreement while Rosenblatt was in New York; (ii) Coutts entered into the agreement with the knowledge that Rosenblatt was a resident of New York; and (iii) Coutts transferred funds and assets to Rosenblatt's New York bank account. These allegations are insufficient to confer personal jurisdiction over Coutts.

Most significantly, "[t]elephone calls and correspondence sent into New York, by a non-domiciliary defendant who is outside New York, generally are insufficient to establish personal jurisdiction." *Int'l Customs Assocs., Inc. v. Ford Motor Co.*, 893 F. Supp. 1251, 1261 (S.D.N.Y. 1995) (collecting cases); *see also Giuliano v. Barch*, 2017 WL 1234042, at *9 (S.D.N.Y. Mar. 31, 2017) ("[C]ourts are generally loath to uphold jurisdiction under the transaction in New York prong of CPLR 302(a)(1) if the contract at issue was negotiated solely by mail, telephone, and fax without any New York presence by the defendant." (internal quotation marks and citation omitted)); *Maranga v. Vira*, 386 F. Supp. 2d 299, 306 (S.D.N.Y. 2005) ("New York courts have consistently refused to sustain section 302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York." (quoting *Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 766 (2d Cir. 1983))). Rosenblatt concedes that no Coutts representative ever visited New York in connection with the transaction at issue.

It is true that under certain circumstances, "proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York[.]" *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010) (citation omitted). However, this is only "so long as the defendant's activities here were purposeful and there is a

substantial relationship between the transaction and the claim asserted." *Id.* Thus, "communications into New York will only be sufficient to establish personal jurisdiction if they were related to some transaction that had its 'center of gravity' inside New York, into which a defendant 'projected himself.'" *Maranga v. Vira*, 386 F. Supp. 2d 299, 306 (S.D.N.Y. 2005) (citations omitted). Here, however, Coutts' connection to New York is entirely incidental, not purposeful, and the transaction's "center of gravity" was Switzerland, not New York.

Nor is Coutts' awareness that Rosenblatt was a New York resident relevant to the question of personal jurisdiction. Rosenblatt argues that by including Rosenblatt's New York address in the agreement, Coutts 'projected' itself into New York for the purpose of transacting business with a New York resident. But a defendant's "mere knowledge that a plaintiff resides in a specific jurisdiction would be insufficient to subject a defendant to specific jurisdiction in that jurisdiction if the defendant does nothing in connection with the [claim] in that jurisdiction." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 338 (2d Cir. 2016). To the extent there is *any* connection between Coutts and New York, that connection was solely a function of Rosenblatt's decision to reside there. But a plaintiff "cannot be the only link between the defendant and the forum," for "it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014).

Lastly, the fact that Coutts transferred money into Rosenblatt's New York bank account does not move the transactions' 'center of gravity' from Switzerland to New York. Although these transfers involved funds and assets that Rosenblatt obtained through his loan from Coutts, the transfers themselves had no connection to the agreement and are irrelevant to Rosenblatt's current claim. But even if these transfers occurred pursuant to the agreement at

7

issue, the "sending of monies into New York [is] not sufficient to establish personal jurisdiction without the defendant having 'projected' itself into New York for the purposes of conducting business there." *Hau Yin To v. HSBC Holdings PLC*, 2017 WL 816136, at *5 (S.D.N.Y. Mar. 1, 2017); *see also Roper Starch Worldwide, Inc. v. Reymer & Assocs., Inc.*, 2 F. Supp. 2d 470, 475 (S.D.N.Y. 1998) ("[M]erely sending payment to New York is not sufficient to establish personal jurisdiction over a defendant under § 302(a)(1).").

### III. The Court Lacks Personal Jurisdiction Over RBS

Rosenblatt concedes that RBS is not subject to general jurisdiction in New York, but contends that there is specific jurisdiction over RBS pursuant to Section 302(a)(3) of the CPLR, which provides that "a court may exercise personal jurisdiction over any non-domiciliary ... who ... commits a tortious act without the state ... if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." CPLR § 302(a)(3).

To establish jurisdiction over a defendant under Section 302(a)(3), in addition to showing that either clause (i) or (ii) has been satisfied, a plaintiff must also show that an injury occurred within the state. *NewMarkets Partners LLC v. Oppenheim*, 638 F. Supp. 2d 394, 403 (S.D.N.Y. 2009) (citing *Ingraham v. Carroll*, 90 N.Y.2d 592, 596 (N.Y. 1997)). Rosenblatt argues that he has been injured in New York because in order to repay the loan following Coutts' termination, he would have to use New York-based funds because "it can be inferred that he cannot possibly satisfy such a demand from funds that he has in Switzerland." Putting aside the fact that Rosenblatt has alleged no facts that would allow the Court to infer that Rosenblatt lacks sufficient funds in Switzerland, this argument fails because the "occurrence of financial

8

consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York." *NewMarkets Partners LLC*, 638 F. Supp. 2d at 403 (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001)); *see also Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 467 (S.D.N.Y. 2008) ("It is firmly established that the domicile or residence of an injured party within New York is not enough to establish personal jurisdiction—rather, a more direct injury must have occurred within New York State."). Here, the injury occurred in Switzerland because the agreement was executed in Switzerland, concerned property and funds in Switzerland, and was subject to Swiss law. Rosenblatt does not allege that RBS had any interactions with Rosenblatt in New York, or that RBS's alleged interference with his agreement with Coutts had any connection to New York. Because Rosenblatt's injury occurred in Switzerland, not New York, Section 302(a)(3) cannot serve as a basis for jurisdiction over RBS.

## CONCLUSION

For these reasons, Defendants' motion to dismiss the complaint for lack of personal jurisdiction is granted. Because the Court lacks personal jurisdiction over both defendants, I need not address whether the doctrine of *forum non conveniens* applies or whether dismissal is also warranted under Rule 12(b)(6) for failure to state a claim. The Clerk shall terminate the motion (Dkt. No. 13) and mark the case closed.

SO ORDERED.

Dated: August 14, 2017
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge